**Joseph John BURTON and Virginia Williams Burton, Plaintiffs,**

v.

**SUBARU OF AMERICA, INC., Southeast Subaru, Inc., Subaru Atlantic, Inc., Nixon Subaru Sales, Inc., and Fuji Heavy Industries, Ltd., Defendants.**

Civ. A. Nos. C85–4228A, C85–4454A.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 9, 1986.

Terrance C. Sullivan, Hart & Sullivan, Atlanta, Ga., for plaintiffs.

Ben L. Weinberg, Jr. & Deborah R. Heyman, Long, Weinberg, Ansley & Wheeler, Robert D. Feagin, III, Steven F. Unti, Alfred B. Adams, III, Phillip G. Conrad, Greene, Buckley, DeRieux & Jones, Atlanta, Ga., for defendants.

ORDER

FORRESTER, District Judge.

This action is before the court on a motion to dismiss for lack of *in personam* jurisdiction filed by defendant Fuji Heavy Industries, Ltd. (Fuji). Fed.R.Civ.P. 12(b)(2). This ground for dismissal was first raised in defendant's answer, thus preserving this defense for assertion in his motion. Fed.R.Civ.P. 12(g) & (h); *see Foss vs. Klapka,* 95 F.R.D. 521, 523 (E.D.Pa. 1982).

■ The burden of establishing personal jurisdiction over a non-resident defendant such as Fuji rests with the plaintiff. *Brown vs. Flowers Industries, Inc.,* 688 F.2d 328, 332 (5th Cir.1982), *cert. denied,* 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983). This court may proceed to decide the jurisdictional question upon the pleadings and affidavits or it may choose to require an evidentiary hearing where issues of credibility or disputed fact must be resolved. 2A *Moore's Federal Practice* ¶ 2.07[2, –2]. As made clear by the following statement of facts, no issues of credibility or disputed fact prevent a ruling based upon the pleadings and affidavits presented to the court.

I. STATEMENT OF FACTS.

This action arose out of an automobile accident which occurred in Clayton County,

Georgia, when plaintiff was driving a Subaru automobile which allegedly experienced a failure of the braking and cruise control system. Complaint, ¶ 10. The automobile was purchased from defendant Nixon Subaru Sales, Inc. of Virginia Beach, Virginia, an American retailer who ultimately received delivery of the automobile in question from defendant Subaru of America, Inc. (SOA). Defendant SOA in turn purchased the automobile from defendant Fuji.

Defendant Fuji manufactured the Subaru automobile. Yoshihara Aff., ¶ 3. The automobile was sold to defendant SOA pursuant to an exclusive distributorship agreement between defendant Fuji and defendant SOA permitting defendant SOA to purchase and distribute Subaru automobiles in the United States. *Id.*, ¶ 10.

Defendant SOA is itself an entirely independent corporation. Kuter Aff., ¶ 2. It takes delivery and title of all Subaru automobiles when the automobiles are loaded for shipment in Japan. *Id.*, ¶ 5. The sale of Subaru automobiles to defendant SOA for re-sale in the United States comprises the only contact which defendant Fuji has with the forum state. *See id.*, ¶¶ 5–7. The record reveals that defendant Fuji does not otherwise have agents or solicit business in Georgia.

## II. CONCLUSIONS OF LAW.

Because a federal court in a diversity action has personal jurisdiction over a non-resident defendant only to the extent permitted by the long-arm statute of the forum state, *see* Fed.R.Civ.P. 4(c); *Southwire Company vs. Trans-World Metals and Company, Ltd.*, 735 F.2d 440, 442 (11th Cir.1984), plaintiff must establish personal jurisdiction over the defendant by reference to Georgia's long-arm statute. That statute provides in pertinent part:

A court of this state may exercise personal jurisdiction over any non-resident ... as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:

....

(3) commits a tortious injury in this state caused by an act or omission outside this state if a tort-feasor regularly does or solicits business, or regularly engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state....

O.C.G.A. ¶ 9–10–91.

The foregoing statutory provision was intended to authorize the exercise of jurisdiction over non-residents "to the maximum extent permitted by procedural due process." *Coe & Payne Company vs. Wood-Ilosaic Corp.*, 230 Ga. 58, 60, 195 S.E.2d 399 (1973). Georgia courts have been particularly protective of their citizens when the non-resident defendant has placed into the stream of commerce an allegedly defective product. For example, in *Timberland Equipment, Ltd. vs. Jones*, 146 Ga.App. 589, 246 S.E.2d 709 (1978), the court upheld jurisdiction over the Pennsylvania manufacturer of hoist which malfunctioned while in use in Georgia. The court noted that the manufacturer knew that the purchaser operated in every state. *Id.* at 391. Consequently, the manufacturer was held to have foreseen being haled into court in a state where the hoist was being used, namely in Georgia. *Id.* This conclusion was considered consistent with the dictates of due process because it was founded upon the jurisdictional contact of expected use of a product placed into the stream of commerce by the manufacturer. As the court observed, "[t]he sale of an item which may reasonably be expected to find its way into the forum state in the ordinary course of events has been held to establish ... a minimum contact in a products liability case." *Id.* at 590, 246 S.E.2d 709 (citations omitted). *Accord Value Engineering Company vs. Gisell*, 140 Ga.App. 44, 230 S.E.2d 29 (1976).

The fact that defendant Fuji has employed an independent distributor of its products in the United States does not alter

the application of the foregoing principles to this case. In upholding jurisdiction over the non-resident manufacturer of Lear Jets, the Georgia court quoted with approval the following passage from the often-cited *American Radiator* case.

> To the extent that its business may be directly affected by transactions occurring here it enjoys benefits from the laws of this State, and it has undoubtedly benefited, to a degree, for the protection which our law has given to the marketing of hot water heaters containing its valves. Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middle man or that someone other than the defendant shipped the product into this state.

> With the increasing specialization of commercial activity and the growing interdependence of business enterprises it is seldom that a manufacturer deals directly with consumers in other States. The fact that the benefit he derives from its laws is an indirect one, however, does not make it any the less essential the conduct of his business; and *it is not unreasonable, where a cause of action arises from alleged defects in its product, to say that the use of such products in the ordinary course of commerce is sufficient contact with this State to justify a requirement that he defend here.*

*Jet America vs. Gates Lear Jet Corp.*, 145 Ga.App. 258, 260–61, 243 S.E.2d 584 (quoting *Gray vs. American Radiator and Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961)) (emphasis added).

■ Based on the well-settled Georgia case law, it is clear that a non-resident defendant such as defendant Fuji is subject to the jurisdiction of Georgia courts for injuries arising out of an allegedly defective product if the corporation enjoys the benefit of the sale and use of its product in Georgia. Exercise of jurisdiction under these circumstances is not unfair or contrary to due process considerations. By introducing Subaru automobiles into the stream of commerce in the United States through an exclusive distributorship with defendant SOA, defendant Fuji purposely availed itself of the resulting economic benefits of the sale of the automobiles in the various states, including Georgia. *World-Wide Volkswagen vs. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) (citing *Hanson vs. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). Moreover, its system of distribution provided ample warning that use of Subaru automobiles in a state such as Georgia might result in litigation over the design and manufacture of the product. *Id.* ("[I]t is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."). In short, the contacts which defendant Fuji has with Georgia by virtue of the sale and use of Subarus in Georgia and plaintiff's accident in Georgia resulting directly from such use make the exercise of jurisdiction consistent with "traditional notions of fair play and substantial justice." *International Shoe Company vs. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

This conclusion is bolstered by analogous Fifth Circuit precedent involving the purchase as well as the use of an allegedly defective Japanese product in Texas. *Oswalt vs. Scripto, Inc.*, 616 F.2d 191 (5th Cir.1980). In that case, the Japanese manufacturer of an allegedly defective cigarette lighter was held subject to the long-arm statute of the State of Texas on the basis of its sale of lighters to an independent American distributor with exclusive distribution rights in national retail outlets. *Id.* at 198. The court found support for the exercise of such jurisdiction in *dicta* of the United States Supreme Court in the case of *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Although the *World-Wide Volkswagen* case involved a question of whether a New York retailer or distributor could be subject to jurisdiction in Oklahoma because of an accident involving a car sold by them in New York, the Court had the following

to say about circumstances under which a corporation will be deemed to have availed itself of the privilege of conducting business within a particular state.

> When a corporation purposely avails itself of the privilege of conducting activities within the forum State, ... it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected cost on to consumers, or, if the risks are too great, severing its connection with the State. Hence, if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other states, it is not unreasonable to subject it to suit in one of those states if its allegedly defective merchandise has there been the source of injury to its owners or to others. The forum State does not exceed its power under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*Oswalt,* 616 F.2d at 199 (quoting *World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567). With the foregoing observations of the Supreme Court in mind, the Fifth Circuit concluded that the exercise of jurisdiction over the Japanese manufacturer was reasonable. The court reasoned that a Japanese manufacturer delivered millions of its lighters to the American distributor with the understanding that the distributor would have the exclusive right to sell the lighters through national retail outlets. The court noted that the Japanese manufacturer had not attempted to limit the states in which the lighters could be sold. *Id.* at 199–200. "By utilizing the distribution network in the United States established by Scripto, Tokai-Seiki has made efforts to serve indirectly the market for its product in Texas [it has] 'delivered its product into the stream of commerce

with the expectation that they will be purchased by consumers in the forum state.' " *Id.* at 200.

This court's observations also find support in a recent order of the United States District Court for the District of Kansas. *Cunningham vs. Subaru of America, Inc.,* 631 F.Supp. 132 (D.Kan.1986). The court upheld jurisdiction over defendant Fuji in an action arising out of an accident in the State of Kansas under a nearly identical long-arm statute. *Id.* at 136. Reviewing numerous decisions by other courts upholding jurisdiction over manufacturers who must be held to have served and derived economic benefit from a very broad, foreseeable market, the court concluded that defendant SOA's status as an independent distributor did not alter the position of defendant Fuji as a manufacturer serving the United States market. *Id.* at 135–36. In view of the system of distribution which contemplates sale or use of Subarus in the various states, the court concluded that jurisdiction over Fuji was reasonable. Fuji could have anticipated use of its product in Kansas. *Id.* at 137.

For the foregoing reasons, defendant Fuji's motion to dismiss is DENIED. "While Fuji greatly profits from the sale of Subaru ... vehicles in the United States, it claims that it is immune from all jurisdictional claims against it in the United States. The court views this as a company which seeks to reap all of the benefits without incurring the resulting liabilities and costs." *Cunningham,* 631 F.Supp. at 136.

## III. CONCLUSION.

In sum, defendant Fuji's motion to dismiss for lack of *in personam* jurisdiction is DENIED. The parties are DIRECTED to submit all future papers in this action under Civil Action No. C85–4228A with the designation of consolidation with Civil Action No. C85–4454A. Although the docket of Civil Action No. C85–4454A will reflect the filing of any future papers, only the file for Civil Action No. C85–4228A will contain the actual papers filed. This arrangement

will relieve the parties of the burden of submitting duplicates merely for the purpose of placement in the file for Civil Action No. C85–4454A. Moreover, this arrangement will relieve the docket clerk of the obligation of filing duplicates in the file for Civil Action No. C85–4454A. Of course, those persons filing papers for the parties will need a copy of this order when filing papers with the Clerk in order to show court personnel the authorization for this procedure.